15721

**WINGARD *ET AL*. v. HENNESSEE**
*IN RE*: HENNESSEE v. HENNESSEE

(33 S. E. (2d), 390)

*Messrs. Douglas & Douglas,* of Winnsboro, S. C., Counsel for Appellants,

*Mr. George H. Davis* and *Mr. L. F. Lanford,* both of Columbia, S. C., Counsel for Respondent,

March 9, 1945.

MR. ASSOCIATE JUSTICE STUKES delivered the unanimous Opinion of the Court:

J. R. Hennessee, late of Fairfield County, died in the U. S. Veterans Hospital at Columbia on August 17, 1942, leaving of force his will which was dated and executed at the hospital on August 13th, but had been previously prepared under his direction by his attorney in Winnsboro. The execution was supervised by the attorney of the Veterans Administration and there is no question in this proceeding but that it was exactly, legally done.

The testator was survived by seven adult children, but one of them, an unmarried daughter, Doris, now above forty-five years of age, is, and always has been, feeble-minded. There has heretofore been no committee of her estate, presumably because she had no property. Omitting formal parts, the will is as follows:

"Item 1. I give, devise and bequeath to my son Ben, all of my property of whatsoever kind and wheresoever situated, in trust nevertheless, to hold and manage same for the benefit of my afflicted daughter, Doris, and himself, and for the support and maintenance of my said daughter in a proper and reasonable manner during the term of her natural life, and at her death, to my said son

Ben in fee simple forever. I am not unmindful of my other children but I feel confident that my son Ben will see that all of my said afflicted daughter's needs are taken care of and that he is in a better position to do so than any of the others. While he is to have no authority to sell my lands during the lifetime of my said daughter, he is hereby given ample and full power to sell any and all of the timber or pulpwood on my lands, if he deems it necessary.

"Item 2. I hereby appoint my said son Ben the Executor of this my Will, without bond."

It was duly probated in common form in the Probate Court of Fairfield County about September 5, 1942, and Ben qualified as executor. There was personal property of the value of several thousand dollars and four tracts of land, 88 acres valued at $500.00, 269.1 acres, 258.5 acres and 334 acres.

Dissatisfaction developed among the children who were not beneficiaries of their father's will and Ben appears to have acceded to their demands that they be admitted to the benefits. Some of them lived in Columbia and all, except the afflicted one, consulted the Columbia attorneys who appear in this appeal for the plaintiffs-respondents. All, with the same exception, executed a written agreement on May 8, 1943, wherein the death of their father and the terms of his will were recited, that the contracting parties omitted from the will had determined to take action for the purpose of invalidating it, upon the stated ground that testator was without the requisite mental capacity, but that because of the cost of litigation it was felt that is was to the best interest of the parties and to the best interest of their sister, Doris, a person *non compos mentis.* that the estate be divided among all the children by mutual agreement, wherefore it was agreed that all the property, not theretofore disposed of by the executor and trustee, be sold at public auction under an order of the Court and that after

the payment of the debts of the decedent the proceeds be divided, one-fourth to the afflicted sister absolutely, and the remaining three-fourths equally among the other six children of their father, but that the 88 acre tract be sold privately for not less than $500.00 and a model A Ford automobile to the daughter, Virginia, for $100.00, and that the daughter, Mrs. J. W. Evans, be appointed committee for her incompetent sister, Doris.

Shortly thereafter this action was instituted in the Court of Common Pleas wherein all testator's competent children were plaintiffs, Ben, individually and as executor and trustee of his father's estate, against Doris, sole defendant. The verified complaint contained allegations of the foregoing facts and the lands were referred to as the home place, consisting of 861.5 acres, and the remainder, separately located, 88 acres, of which a detailed description was attached to the complaint as an exhibit; that the parties had executed the agreement by way of compromise but that question has arisen as to the power of Ben, as executor and trustee, to execute the agreement, and that the action was brought for the purpose of "securing the advice and instruction of the Court with regard to his powers and details concerning said trust estate." And it was alleged that the arrangement would be to the advantage of the incompetent sister for she would receive one-fourth of the whole estate in fee whereas the will gave her only a life estate as *cestui que* trust, and she would receive only one-seventh should the will be set aside. There were other allegations which, however, are unimportant in this appeal. The prayer was in great detail, that the contracted settlement be confirmed and Ben be directed to carry it out, that the 88 acres be sold privately for $500.00, a 1939 Ford be similarly sold to Ben for $450.00, a model A Ford to Virginia for $100.00, and that all the remainder of the estate be sold at public auction after notice and the proceeds distributed in accord with the agreement, and finally

that Mrs. Evans be appointed committee for Doris, with Bond.

A respected member of the Columbia bar was appointed guardian *ad litem* for the incompetent defendant and filed a formal answer denying knowledge or information sufficient to form a belief as to the allegations of the complaint and submitting her rights to the protection of the Court. For former pronouncements of this Court relating to the duties of the guardian *ad litem* of a defendant *non sui juris,* see *Simpson v. Doggett,* 159 S. C., 294, 156 S. E., 771, and cases there cited. However, more than mere protection of the ward's rights finally resulted in this instance, as will be seen.

The matter was heard by the Judge of the circuit at chambers at which testimony was taken from some of the parties but it was not reduced to writing, and on October 2, 1943, decree was rendered reciting that all of the parties were present at the hearing or duly represented by counsel, that the main intent of the testator was to take care of his feeble-minded daughter but that there was serious question whether he had the necessary mental capacity to make his will and that the Court was assured by the testimony of Doris' brothers and sisters that they are willing to take good care of her and furnish her with a home; that it was the Court's opinion that it would be to the best interests of all the parties to approve and confirm the agreement of those *sui juris,* which was done; and it was adjudged that the will was null and void upon condition that the provisions of the decree be complied with by the parties. It was further ordered that Doris take one-fourth interest in fee in all of the assets, real and personal, of the estate, after payment of the debts of the latter and the costs of the action; that a committee be appointed for Doris in the Probate Court, with the usual duties; that the 88-acre tract of land be sold for $500.00, and the Clerk make deed; that the 1939 Ford

be sold to Ben for $450.00, and the model A Ford to Virginia for $100.00; and that the Clerk advertise and sell publicly the 861 acres of land, first separately in three parcels, then as a whole and whichever method should yield the most should be accepted, and that upon compliance by the bidder or bidders, deed or deeds be made and he or they be let into possession; that one-fourth of the proceeds be paid to a duly appointed committee for Doris and the remaining three-fourths paid in equal shares to the six plaintiffs who are, as seen, the brothers and sisters of Doris; and that the personal property of the estate be similarly sold by the Clerk, at public or private sale, as a whole or in parcels, whichever he deem in the best interest of the parties, and that the proceeds of all sales be used first for the payment of the debts of the estate, the costs and fees of the action, and the remainder distributed as already stated with respect to the proceeds of the sale of the real estate. Finally it was provided that a fee of $500.00, be paid to plaintiffs' attorney, found to be reasonable, all out of the plaintiffs' share of the proceeds, and $25.00 to the guardian *ad litem* for his services; and the degree concluded as follows: "This opinion is for the purpose of permitting any parties herein to apply to this Court upon four (4) days' notice for such other and further review as may be necessary to carry out the terms of this decree."

The sales only of the lands are involved in this appeal. From the final decree, hereinafter adverted to the plaintiffs excepted but later they shifted solely to the position of respondents and did not argue the exceptions which they took so the latter must be deemed to have been abandoned. The only real appellants before this Court are the three purchasers of the land, as hereinafter will more fully appear. The guardian *ad litem* of Doris appeared at the argument of the appeal and stated his position in her behalf, that he joined the plaintiffs in asking for affirmance.

The public sales by the Clerk were held after due advertisement on November 1, 1943. At the sales J. B. Wingard was the successful bidder at $2,800.00 for a tract of 269.1 acres, as was D. A. Crawford with respect to another tract of 258.5 acres for $1,685.00, and J. H. Frazier, Jr., with respect to 334 acres for $1,600.00. All of these successful bidders, who are now the appellants, refused to comply with their respective bids upon advice of able counsel upon the ground that the Court had exceeded its power in ordering the sales. Rule was issued against them and they made return, to which the plaintiffs, respondents here, demurred. Upon the hearing thereon the Court referred the case to a special referee to take testimony and report his factual findings. Upon the coming in of such report, appellants continued to resist compliance with their bids, reiterating the contentions contained in their return to the rule that the Court had no authority to order the sales and also that it was without jurisdiction to amend or supplement its former decree. After arguments the Court filed another decree dated May 1, 1944, called a supplemental one, wherein the history of the previous proceedings was recited and it was found that Ben was not living on the land and did not cultivate it in 1943, that he has a frail wife and four young children and it was very doubtful whether Doris would be satisfied in his household, she being at least twenty years older than he.

It was found that the land was not regarded as productive for farming purposes. It was purchased by testator for $5,000.00 about a year before his death and he had sold off the timber for $3,000.00. Ben was not farming the land and there was no income from it to support Doris, and if it should be sold for the bid prices which represent present values, the proceeds would furnish reasonable support for her.

It was further recited as follows with respect to the results of the sales ordered in the former decree:

"269.1 acres to J. B. Wingard for ........$2,800.00
258.5 acres to D. A. Crawford for ........ 1,685.00
334.0 acres to J. B. Frazier for .......... 1,600.00
88.0 acres to be sold for ............... 500.00

Total sale of land ................... 6,585.00
Sale of personalty above ............. 2,156.75

Cash value of estate is .............$8,741.75"

After further recital of the prior proceedings, it was held that the first decree, that of October 2, 1943, exceeded the purpose of the suit in its declaration that the will was null and void and the parties now so agree, and that the will must be enforced so far as Doris is concerned, but the suit should not fail entirely and that the parties *sui juris* (which were all, save Doris) are bound by their written agreement; that Ben has not been successful in managing the land and has derived no income from it so that it is necessary to sell the land for change of investment or to use the proceeds for the support of Doris, whose interest under the will is paramount, and that all of the proceeds of the sale of the estate should be held in trust for her support and maintenance as long as she lives, the income used for her support in the home of some members of her family or with whomever she resides in the future, and that the Court may order use of a portion of the corpus of the trust estate, if necessary in her support, and that any surplus remaining at her death in excess of one-fourth of the principal should pass to the other contracting parties as provided in their agreement.

It was further held that the action is one in equity to invoke the aid and advice of the Court in the construction and enforcement of the will, to settle the estate, to provide for

the support of the afflicted sister who was the beneficiary of the will, and to carry out the family settlement agreed upon by the others as far as consistent with the terms of the will.

It was accordingly ordered and adjudged that the purchasers (the present appellants) comply with their respective bids and that thereupon deeds be delivered to them and that all funds received by the Clerk be held by him subject to the further order of the Court with leave to the parties to apply thereto for the appointment of a proper and suitable trustee.

*Stafford v. Stafford,* 200 S. C., 1, 20 S. E. (2d), 217, was cited and relied upon as authority for the action of the Court in directing the sale and reinvestment of the proceeds of the real estate in other securities approved by the Court not to be transferred during the life of the trust and until the falling in of the life estate, with payment of the income and profits for the benefit of the life tenant, the *cestui que* trust, and distribution thereafter to the remaindermen according to their respective interests. *Cannon v. Cannon,* 135 S. C., 183, 133 S. E., 556, and *Kirkham v. First Nat. Bank of City of New York,* 149 S. C., 545, 147 S. E., 648, were also cited, and the judgment of the Court concluded as follows:

"Therefore, in conformity to the cases above cited, it is further ordered that the Trustee when appointed shall qualify by giving ample surety, as the Court may hereafter direct, to hold said funds under the will for the benefit and support of Doris, as long as she lives, and for such reinvestment as may to the Court seem meet and proper; and at the death of Doris, three-fourths thereof to be held in fee simple by the plaintiffs to this suit, their heirs and assigns; and in the event that it be necessary for the corpus to be spent to support Doris, that one-fourth of the original

amount of the funds shall be first so applied, as the Court shall hereafter direct.

"It is, also ordered that the costs of the suit be taxed by the Clerk after due notice to the parties, or their attorneys with leave to the parties to apply to the Court for the allowance of proper fees for the Referee and Attorneys, as the Court may deem equitable and just, and for such further relief to which the parties may be entitled, not in conflict with the terms of this Decree—in order to carry out and enforce the Decree."

It is repeated again for emphasis that all parties have abandoned their exceptions save the successful bidders at the sale, Messrs. Wingard, Crawford and Frazier, whose counsel earnestly urge that they cannot be required to comply with their bids. They have epitomized their exceptions by the following statement on page 1 of their brief of the questions involved as follows:

"Is the decree null and void for the want of power and authority in law to render it?

"Could the second decree be made correcting, modifying, changing and reviewing the first decree and the judgment entered and enrolled, upon a different cause of action?"

The first inquiry naturally is, what standing have appellants to challenge the judgment of the Court in this action in which they are interested only as purchasers of the land which was sold under the direction of the Court, and by its officer at public auction? They say in conclusion of their printed brief: "We are convinced that a good title in fee simple cannot be conveyed in this action to the purchasers, much to their regret. They are satisfied with their bargain though the land was not purchased at less than its value." However, they have contested with unremitting vigor respondents' moves to enforce compliance with their bids.

They point out no defect in testator's title to the lands, so the case is simplified to the extent that it need only be inquired whether they will have good title upon the conveyance to them by the Clerk upon their compliance with the voluntary bids. It is further simplified by the consideration that the Court undoubtedly had jurisdiction both of the subject-matter (which was the land and the respective rights of the parties therein) and the persons of all possible claimants thereto. The latter indicates a negative answer to appellants' first question. .

In consideration of the whole problem it should be further borne in mind that public interest and precedent dictate the fostering of stability of judicial sales—the less attack they are subject to the more the property in apt to bring, a *desideratum* of all save the purchasers. This statement of the rule substantiates it but supporting cases from this Court may be found in 21 S. E. Digest, Judicial Sales, Key 34, pp. 27, 28.

The following is from the opinion in *Tederall v. Bouknight*, 25 S. C., 275: "It is undoubtedly the policy of the law to maintain judicial sales wherever it can be done without violating principle or doing injustice; and in this view it is held that a purchaser at such a sale is in no way responsible for mere irregularities in the proceedings, or even error in the judgment, under which the sale is made. There are, however, two matters as to which purchasers are required at their peril to make inquiry, *viz.*, that the court ordering the sale had jurisdiction of the subject-matter, and that all proper parties were before the court when the order was made. *Trapier v. Waldo*, and authorities, 16 S. C. [276] 22." Included in the foregoing observation is the elementary consideration that it is the right and duty of the purchaser to investigate and accept at his peril the title of the parties to the suit, and he may reject it and

rightfully refuse to comply with his bid if he discover an incurable defect of title of which the judgment or advertisement of sale gave no notice and he did not have actual knowledge. 21 S. E. Digest, Judicial Sales, Key 27, p. 17 *et seq.*

In the case just cited, *Trapier v. Waldo,* similar in many respects to this, it was said by an able Court: "Were all necessary parties before the court * * *? The question is made by one who has no connection with the case except through his purchase of the land sold. If the proceedings are sufficient to carry good titles to the land he should not be heard to make objections which reach beyond that."

If they (purchasers) are not required to look further than to the matter of the Court's jurisdiction of subject-matter and persons, which is the case, then they have no business attempting to look further for fault in the proceeding in which they purchased, certainly so when the real parties to the action are satisfied with the judgment; here they are; those of them who first excepted have not pursued their appeal; and the guardian *ad litem* of the one *non compos mentis* asks for affirmance.

From the foregoing it clearly appears, upon reason and authority, that the appellants are not in position to press the second question which they present. However, it should be observed that the lower Court has not destroyed the trust created by testator as charged, or even impaired it; indeed, as it has increased the value of it to the *cestui que* trust, the latter through the willingness of Ben to forego in her favor for life the provision for him which the will contained. He and his fellow-respondents (his competent brothers and sisters) accurately say at the end of their brief in this Court:

"The interest of the *non compos mentis,* Doris Hennessee, is enlarged in that under the terms of the will the estate of

J. R. Hennessee, deceased, was to be used for the benefit of Ben·Hennessee and· Doris Hennessee during the life of Doris Hennessee and under the supplemental decree the proceeds of the entire estate are to be used for the support of Doris Hennessee to the exclusion of Ben Hennessee.

"The primary interest of the respondents is to protect the rights and care of Doris Hennessee.

"If the parties have no quarrel with the supplemental decree, certainly, a purchaser who has no interest other than obtaining a good title should have no reason to complain."

The action as consummated was one for the change of investment of the trust *res.* The power and duty of a Court of equity to provide by sale for such in the case of reasonable necessity, here found by the lower Court and now affirmed because it is amply supported by the evidence, are too well-established to require the citation of authority. Many decisions of this Court to that effect (in addition to those cited in the decree under review) are digested in 33 S. E. Digest, Trusts, Key 193½, 194, p. ·164 *et seq.* See also, Restatement of the Law of Trusts, Vol. I, par. 167.

The case is not at all like *Bettis v. Harrison,* 186 S. C., 352, 195 S. E., 835, 838, which appellants largely rely upon. There the lower Court erroneously undertook to destroy half of a remainder in real estate by giving to the life tenant a moiety of the proceeds of a proposed sale of it. On the contrary, this Court said in that case: "The purchaser takes a good title when the sale is ordered by the court with all parties *in .esse* properly before it and their rights in the property are transferred to the proceeds of the sale."

The exceptions of the appellants (the successful bidders at the sale) are overruled and the judgment of the Circuit Court is affirmed.

Mr. Chief Justice Baker and Messrs. Associate Justices Fishburne, Taylor and Oxner concur.