18057

Henry Thomas TODD, Respondent, v. Ruby Lee Holt TODD, Appellant

(130 S. E. (2d) 552)

*Messrs. H. T. Abbott,* of Conway, and *McEachin, Townsend & Zeigler,* of Florence, *for Appellant,*

*Messrs. Yarborough & Parrott,* of Florence, *for Respondent,*

April 18, 1963.

Moss, Justice.

Henry Thomas Todd, the respondent herein, on August 30, 1961, instituted this action for a divorce *a vinculo matri-*

*mornii* from his wife, Ruby Lee Holt Todd, the appellant herein, on the ground of desertion; Section 20-101 (2) of the 1952 Code of South Carolina; or in the alternative for a legal separation. He also asks that custody of the three minor children of the marriage be awarded to him. The appellant, by her answer, denied that she had deserted her husband and affirmatively alleged that she was entitled to the custody of the children; that she be granted support and maintenance for herself and the children and for a reasonable attorney's fee for her counsel.

This case was tried before the Honorable W. T. McGowan, Jr., Judge of the Civil Court of Florence, and, on May 28, 1962, he issued an order denying the divorce, giving custody of the children to the respondent and his parents during the nine months school term of each year, with visitation rights to the appellant during such period, and giving custody of the children during the summer months to the appellant and her parents, with visitation rights to the respondent. The order also granted support and maintenance for the children while they are in the appellant's custody. The Trial Judge allowed the attorneys for the appellant a fee of $250.00 for their services to her. The Trial Judge denied any support for the appellant. The appeal to this Court is from the foregoing order.

The first question for determination is whether or not the Trial Judge erred in failing to give primary custody of the three minor children of the marriage to the appellant.

This action is one in equity. Section 20-105 of the 1952 Code. It is the established law in this State that in an equity case this Court may reverse the findings of fact of a Judge of a County Court when the appellant satisfies this Court that the findings of the Trial Judge are without evidentiary support or are against the clear preponderance of the evidence. *Frazier v. Frazier,* 228 S. C. 149, 89 S. E. (2d) 225, and *Oswald v. Oswald,* 230 S. C. 299, 95 S. E. (2d) 493.

We have held in numerous cases that the welfare of the children and what is for their best interest is the primary, paramount, and controlling consideration of the Court in all controversies between parents over the custody of their minor children. *Koon v. Koon,* 203 S. C. 556, 28 S. E. (2d) 89; *Powell v. Powell,* 231 S. C. 283, 98 S. E. (2d) 764; *Moore v. Moore,* 235 S. C. 386, 111 S. E. (2d) 695; and *Ex Parte Atkinson,* 238 S. C. 521, 121 S. E. (2d) 4. Our statute, Sections 31-51 of the 1952 Code, puts the father and mother upon parity with respect to the legal right of custody of their children and, further expressly provides, as all of our pertinent decisions hold, that the welfare of the children is the first consideration of the Court.

The parties to this action were married on December 3, 1950. Three children were born of this marriage, two boys, now eleven and nine years old, respectively, and one girl, now five years old. These children, at the time of the trial, were residing with the parents of the husband near Loris, South Carolina. The two boys were taken to the home of the husband's parents on August 29, 1961, and the girl has been in the home since she was fourteen months old.

The parties to this action lived together in the same house in Florence, South Carolina, until August 30, 1961, when the respondent left the home of the parties and took up residence in the dormitory of the Young Men's Christian Association in the City of Florence. Admittedly, the respondent has not furnished the appellant any support and she is now living in Conway, South Carolina, in a home built for her by her father and is receiving her support from him.

It is undisputed that the appellant had a mental illness which required her confinement in the State Hospital in Columbia, South Carolina, for a period of seven or eight months and she was released therefrom on or about June 13, 1960. The appellant returned to her home in Florence upon her release from the hospital and lived in the home with the respondent until their separation on August 30,

1961. While the appellant was in the State Hospital, the respondent took care of the two boys with the aid and assistance from employed domestic help.

It is the contention of the respondent, and he testified that upon the return of the appellant from the State Hospital that she completely withdrew herself from him and lived separate and apart, sleeping by herself in a separate bedroom. He asserts that she has refused to cook meals or wash clothes for the respondent or the children, or to perform any household duties for the comfort and welfare of the family. The respondent also testified that even though the parties were living together in the same house they did not cohabit as man and wife.

After the appellant returned from the State Hospital in June, 1960, she was under the care of a physician and saw him every two or three weeks. In the fall of 1960, a hysterectomy was performed upon the appellant.

It is a fact that while the appellant was confined in the State Hospital that the respondent employed a domestic servant to perform household duties. When the appellant returned from the hospital, the respondent discharged such servant and placed the entire burden of care of the house and children upon her while she was a convalescent. Even though the mother of the appellant offered to pay for a servant to assist the appellant in her household duties, the respondent refused to permit such.

The appellant alleges that during the time she was confined in the State Hospital and thereafter, that the respondent consorted with other women. We point to the testmony of the respondent upon this issue: ".Q What women are you going with now and who were you going with then? A. I have several old friends I saw occasionally. I have no regular girl friend." There is also testimony of a relationship of the respondent with a Mrs. Bishop, a divorcee. The respondent admits that he and the boys stayed at the Bishop home for three nights. He denied any improper relations but did testi-

fy as follows: "Q. Is Mrs. Bishop related to you? A. No. Q. Is she a friend of yours? A. Very close friend. Q. Is she a friend of Mrs. Todd? A. I hardly think so."

The appellant contends that the respondent instituted this action for a divorce primarily for the purpose of marrying some other woman. She contends that the conduct of her husband was designed to alienate the natural affection of the children towards her and to aggravate her mental condition. She asserts that he even suggested that she commit suicide. The appellant testified that her husband told their sons, "Let's get a new mother." When the respondent was asked if he made such a remark, he replied, "I had made a remark in a joking way with them. I had never made that remark with the intention of doing it." The wife testified that her husband put a butcher knife in her hand and said, "Go on and kill yourself." When cross examined as to this incident, the husband testified that his wife had made threats that she would take her own life, and when asked, "Didn't you encourage her?" he answered, "I told her if she wanted to do it to go ahead. I didn't encourage it." The wife testified that her sons slept in a separate bedroom "locking themselves up in the room" and that they did so at the instruction of the father. When he was cross examined thereabout, he responded, "I did not instruct them to lock the door. They didn't like for her staying with them like she did. I didn't tell them to lock the door. I told them if they wanted to lock it, they could lock it." The wife testified that when she came back from the State Hospital she took over the household duties, including the preparation of meals for the family, and that on one occasion when she had prepared supper for the family he stated that he was not going to eat the food because she might put poison in it; that on this particular occasion when the supper was on the table, the husband and the children refused to eat it and he prepared another meal. When asked about this incident, he denied that he stated that the wife might poison the food but, with reference to the children, he said: "If they didn't want to eat it, they

didn't have to do it." There is also testimony that the husband so connected a radio in the garage that when the switch was thrown inside of the house, the radio would go into operation, and that the husband told his wife if she was hearing voices that meant that she was cracking up or crazy. When cross examined about this situation, the husband admitted that he did have a radio out in the garage and that he probably left it on but for no particular reason. He explained that the children would go out and turn it on after he had gone to work.

The only actual testimony that the appellant was not performing necessary household duties is the uncorroborated testimony of the respondent. The appellant's testimony that she performed her household duties in a satisfactory manner is corroborated by her mother and father, brother, sister, and another witness who was not related to her.

The father and mother of the respondent were at the time of this hearing 68 and 73 years old, respectively. They reside on a twenty-six acre farm seven miles south of Loris. It was testified that the children go to school every day and to church on Sunday. The father of the children contributes $25.00 a week for their support. He visits them weekly.

The appellant occupies a four room apartment in a house that she owns in Conway. This home is adjacent to the home of her parents. Mrs. Holt, the mother of the appellant, is a licensed foster mother, and, at the time of the trial, was keeping six children for the Public Welfare Department. The testimony is that the Holts are of excellent reputation in every respect. The respondent admits this to be true. They are 50 and 48 years of age, respectively. Mrs. Holt agrees that if the children are awarded to the appellant she will assist her in taking care of them and, if necessary so to do, she will forego the keeping of the children for the Public Welfare Department.

The record shows, and such is admitted by the respondent, that the appellant is now in good health. There is no testi-

mony reflecting upon the moral character of the appellant. She is not employed and hence can give her undivided attention to the rearing of her children.

Even though the primary custody of the children here involved was awarded to the respondent, his parents have the actual custody of the children. These grandparents are fast approaching old age and naturally they cannot give to these children the care and attention that a younger person could. The mother of these children, now in good health, with a father and mother who are able and willing to assist her in caring for them, asks that their custody be given to her. A mother, who is of good character and a proper person to have the custody of her children, and reasonably able to provide for them, is entitled to the custody as against even grandparents.

We conclude that the clear preponderance of the evidence requires that the custody and possession of the children here should be given to the appellant. We think it for the best interest and welfare of the children that custody be awarded to the mother, with reasonable visitoral privileges to the respondent and his parents, and that a decree should issue in the lower Court permitting the children to visit with their father and grandparents at reasonable intervals. It should be further provided that if it hereafter appears that it is not for the best interest of the children to continue in the custody of their mother, then it would be proper for the Court to make such other disposition of the custody as the Court deems best. On the question of custody of children of tender years, reference is made to the case of *Ex Parte Atkinson*, 238 S. C. 521, 121 S. E. (2d) 4, and the cases therein cited. The lower court should also fix a reasonable monthly sum to be paid by the respondent to the appellant for the support and maintenance of said children.

The next question for determination is whether the Trial Judge committed error in refusing to allow the appellant separate maintenance and support.

The causes for which separate maintenance may be granted are not confined to those which constitute grounds for divorce. Accordingly, a Court may decree such maintenance although a divorce is denied. There is no statute in this State undertakng to fix the grounds for separate maintenance and support and this is left to the discretion of the Court. *Machado v. Machado,* 220 S. C. 90, 66 S. E. (2d) 629.

There is a statutory duty imposed upon a husband to support his wife unless he has just cause or excuse for his failure so to do. Section 20-303 of the Code. Where husband abandons his wife, destroys his home, and provides no other place for her, his failure to supply her with the necessities of life in the place where circumstances compel her to live, constitutes a violation of the foregoing statute. *State v. Stone,* 111 S. C. 496, 98 S. E. 333. The fact that the wife may be supported by her parents is no defense to a prosecution under the statute requiring a husband to support his wife. *State v. English,* 101 S. C. 304, 85 S. E. 721, L. R. A. 1915 F, 977. A husband who has just cause or excuse for his failure to support his wife has the burden of proving such. *State v. Collins,* 235 S. C. 65, 110 S. E. (2d) 270.

The respondent instituted this action for a divorce on the ground of desertion. The Trial Judge denied the respondent a divorce on this ground and also denied separate support and maintenance to the appellant, basing such upon the finding that the appellant was not performing her necessary household duties. He also found that the respondent left the marital home making it necessary for the appellant to seek support from her parents.

We think that the finding of the lower Court that the respondent had just cause or excuse for failure to support his wife is against the clear preponderence of the evidence. The breaking up of the home where the parties lived was brought about by the callous conduct and indifference of the respondent towards the appellant. When the ap-

pellant returned to the home from the State Hospital she was convalescing from a mental illness and the respondent, instead of being cooperative and diligent in bringing about her complete recovery, assumed an attitude calculated and designed to retard rather than promote such recovery. We have heretofore recited many of the acts and statements of the respondent showing, in our opinion, a desire and intent to terminate the marriage relation and cohabitation with the appellant. It appears to us that instead of the husband providing for his wife a home wherein she could live as the object of his care and affection, she became a victim of his ill treatment, intolerance, and a lack of sympathetic understanding, particularly in view of her physical and mental condition.

There is no question of the ability of the respondent to support his wife. He has earnings of $85.00 to $100.00 per week and, in addition thereto, approximately $85.00 as rent per month on two apartments.

It is our conclusion that the Trial Judge committed legal error denying separate support and maintenance to the appellant. Upon remand of this case he should fix a reasonable amout for her support and maintenance.

The final question for determination is whether the Trial Judge erred in fixing a fee of $250.00 for appellant's counsel. The appellant suggests that a fee of not less than $500.00 would be a reasonable sum for the services rended by her counsel.

Section 20-112 of the 1952 Code, which is the statutory authority for appellant's claim, provides that in every action for absolute divorce the wife, whether plaintiff or defendant, may apply for allowance of a fee for her attorneys and if such claim appears well founded, the Court shall allow a reasonable sum therefor. The Court below determined that appellant's counsel were entitled to a fee for services rendered her. In fixing the fee it should be taken into consideraton the nature, extent and difficulties of the services rendered, the time necessarily devoted to the

274

case, the professional standing of counsel, the contingency of compensation and the beneficial result accomplished. *Collins v. Collins,* 239 S. C. 170, 122 S. E. (2d) 1.

We have considered the entire record in this case which shows that the matter came up initially upon a rule to show cause, necessarily requiring a return and appearance of counsel. When the case was heard on the merits, it required the taking of testimony on two separate days. Upon appeal to this Court from a judgment of the lower Court it was necessary for counsel to prepare the record for appellant *in forma pauperis* and to appear before this Court and make oral arguments. This opinion also demonstrates the beneficial result accomplished by counsel for the appellant, and the necessity for a further appearance in the lower Court. Considering all of the foregoing factors, we are of opinion that $500.00 is a fair and reasonable sum to be allowed as compensation to appellant's counsel for services in this case.

The decree appealed from is reversed and this case remanded to the lower Court for further proceedings in conformity with this opinion.

Reversed and remanded.

TAYLOR, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.