18295

R. P. BYRD, Jr., Appellant, v. Mrs. W. L. KING et al., Respondents

(140 S. E. (2d) 158)

*Messrs. Dusenbury, Dusenbury & McKenzie,* of Florence, *for Appellant,*

*Messrs. McEachin, Townsend & Zeigler,* of Florence, *for Respondents,*

January 19, 1965.

Moss, Justice.

R. P. Byrd, Sr., died testate on March 9, 1928, leaving of force and effect his will dated January 13, 1928, which said will was duly admitted to probate in Florence County on March 15, 1928. Generally, the will of the testator leaves his real property to his wife, Martha Byrd for life, and after her death, in trust for his two sons, George S. Byrd and R. P. Byrd, Jr., with various contingent remainders over after the death of each of the two sons. The tract of land with which we are here concerned is described as the "Home Place" and is a part of a larger tract of land owned by the

testator which contained 1,349 acres. The "Home Place" contains 889 acres but several places in the record it is described as containing 900 acres, more or less. This tract was devised by the testator to trustees after the death of his wife for the use and benefit of R. P. Byrd, Jr., for and during the term of his natural life, and upon his death the devolution of title is fully set forth in said will.

The will appointed J. R. Lawrence and W. C. Law as executors thereof, and also as trustees for George S. Byrd and R. P. Byrd, Jr. These trustees never actually functioned as such, but upon the completion of the administration of the estate of R. P. Byrd, Sr., Mrs. Martha Byrd, the wife of the testator having died in January, 1936, and J. R. Lawrence, one of the trustees named, having died, W. C. Law, the surviving trustee, petitioned the court to be discharged from the trust and for the appointment of other trustees. It appears that by an order of the Court of Common Pleas, dated March 1, 1940, that J. W. Parker, Sr. and George M. McCown were appointed as trustees in the place and stead of the former trustees, with all the rights, powers and privileges, and subject to all the terms, conditions and restrictions contained in the will of R. P. Byrd, Sr., deceased. This was done with the consent and approval of R. P. Byrd, Jr.

Mrs. Martha Byrd, the wife of the testator, until her death in January, 1936, occupied the entire tract of land containing 1,349 acres, and after her death, each of the sons took over, subject to the trust provisions of the will, his separate part of his father's lands. R. P. Byrd, Jr., endeavored to farm the "Home Place" but without success.

R. P. Byrd, Jr., after his unsuccessful effort to farm the "Home Place", was employed in various capacities, including work for the Master in Equity of Florence County, the State Highway Department, Sinclair Refining Company, and others. Some time in 1942 he moved with his family to Florida and has since been living there.

It appears that on June 12, 1936, that R. P. Byrd, Jr., entered into a lease agreement with D. S. McCarthy and G. C. Chandler for a part of the "Home Place" containing 100 acres. This tract is referred to as the "Fish Pond Tract" and is described as containing 75 acres, more or less. This lease did not expire until January 1, 1950. On October 5, 1936, R. P. Byrd, Jr., conveyed his interest in the "Fish Pond Tract", described as containing 75 acres, together with a 65 acre tract including the "home site" to his three minor children, Joanne Byrd, R. P. Byrd, III, and Edward Byrd. These tracts are all a part of the 889 acre tract known as the "Home Place". R. P. Byrd, Jr., was, on November 3, 1937, appointed general guardian of these three minor children. They are all now *sui juris*.

On October 27, 1945, R. P. Byrd, Jr., assigned his right to the beneficial interest in the income from the "Home Place" to J. W. Parker, Sr., and George McCown for a period of ten years, upon their promise to pay him annually the sum of Four Hundred ($400.00) Dollars.

R. P. Byrd, Jr., on May 30, 1950, for a consideration of Four Thousand Five Hundred ($4,500.00) Dollars, conveyed all of his interest in the "Home Place" to Mamie McCown, the wife of George M. McCown. Following the description of the property as is contained in said deed, is a paragraph which reads as follows:

"It is understood that the grantor herein and this instrument of writing sells, transfers and assigns to the grantee any and all of the rents and profits which he might have title. to from the above described premises pursuant to the last will and testament of R. P. Byrd, and the grantor hereby directs for the rest of his natural life for the trustees or their successors in office to turn over to the grantee herein any and all rents and profits of whatsoever benefits he might be entitled to from the above described premises."

Mrs. Mamie McCown died testate on August 29, 1954 and, by the terms of her will, she devised all of her real estate to her husband, George M. McCown. Her right to the

beneficial interest in the "Home Place" for the life of R. P. Byrd, Jr., was listed as an asset of her estate and valued at Three Thousand Five Hundred ($3,500.00) Dollars. Her estate was fully administered and her executor discharged on May 31, 1956. Her interest in the income from the Byrd lands passed under the terms of her will to George M. McCown.

George M. McCown died testate on June 24, 1956, and listed among the assets of his estate is the beneficial interest in the "Home Place" for the life of R. P. Byrd, Jr. It was again valued at Three Thousand Five Hundred ($3,500.00) Dollars. His estate was fully administered and his executor discharged on August 6, 1957. The interest of the testator in the Byrd lands passed under his will to his children, who have received the income from the Byrd lands since the settlement of the George M. McCown estate.

This action was commenced by R. P. Byrd, Jr., the appellant herein, on October 31, 1960. The complaint alleges two causes of action: (1) An action to set aside a deed given by the appellant to Mamie McCown conveying all of the rents and profits which he might have title to from the tract of land known as the "Home Place"; and (2) To require the surviving trustee, J. W. Parker, Sr., and the heirs of the deceased trustee, George M. McCown, to render an accounting to their *cestui que trust,* the appellant herein, of all of their actions and all of the amounts due from rents and profits since 1940. The answer of the respondents, who were heirs at law of George M. McCown and Mamie McCown, and J. W. Parker, Sr., as surviving trustee for the R. P. Byrd lands, sets forth: (1) a general denial; (2) a denial that there was any further accounting to be made to the appellant in connection with the Byrd lands and an averment that the deed given by R. P. Byrd, Jr., is valid, and the estates of Mamie McCown and George McCown, having been fully administered, the appellant having made no claim against these estates, has no cause of action against the heirs at law, devisees or distributees thereof; (3) that more than

six years have elapsed since the death of Mamie McCown and the appellant is barred by the statute of limitation, and that more than ten years having elapsed since the execution of the deed, the appellant is barred by laches and the statute of limitation; and (4) a denial that the appellant was entitled to any further accounting, other than those previously rendered him. All of the other respondents having only contingent or derivative interest in the case file *pro forma* answers.

This cause was, by a general order of reference, referred to the Master of Florence County. The Master found all of the issues in this cause in favor of the respondents. The appellant filed fifty-two exceptions to the Master's report and a hearing was held thereon before the Honorable James A. Spruill, Jr., Judge of the Fourth Judicial Circuit. On October 4, 1963, an order was filed confirming the Master's report and making it the judgment of the Circuit Court with the statement that "The Report of the Master is amply justified by the facts and the law which are stated at length therein." This appeal followed.

An action for the cancellation of a deed for fraud is equitable in nature. *Mills v. Little,* 158 S. C. 17, 155 S. E. 148. An action for an accounting is also equitable in nature. *Wise v. Picow,* 232 S. C. 237, 101 S. E. (2d) 651. This being true, we are bound by the rule that in an equitable case the findings of fact by the Master, concurred in by the Circuit Judge, are conclusive upon this Court and will not be disturbed unless it is shown that such findings are without evidentiary support or are against the clear preponderance of the evidence. *Carsten v. Wilson,* 241 S. C. 516, 129 S. E. (2d) 431. It was particularly within the province of the Master to pass upon the credibility of witnesses whom he saw and heard. *Hamilton v. Palmetto Properties, Inc.,* 237 S. C. 140, 116 S. E. (2d) 12.

The first question for determination is whether the deed from the appellant to Mrs. Mamie McCown was a valid one, she being the wife of George M. McCown, one of the trustees

here involved. It is the position of the appellant that a purchase of trust property by a wife of the trustee is improper and voidable by the *cestui que trust* even though the transaction is free from actual fraud and supported by a fair consideration.

It has been held that the estate or interest of a *cestui que trust* in trust property, may ordinarily be alienated or encumbered by the *cestui que trust* without the assent of the trustee, where such interest or estate is separable, and the *cestui que trust* is not under any disability. However the assignee may receive only such interest and right as the *cestui que trust* has in the trust. 90 C. J. S. Trusts § 193; *Blair v. Commissioner,* 300 U. S. 5, 57 S. Ct. 330, 81 L. Ed. 465; *Brown v. Fletcher,* 235 U. S. 589, 35 S. Ct. 154, 59 L. Ed. 374; *Hamer v. David,* 138 S. C. 491, 136 S. E. 744.

The Master found as a fact that the deed from the appellant to Mrs. Mamie McCown, of his life interest in the 889 acre tract of land, for $4,500.00 was a fair consideration, that there was no market for the sale of such an interest; that the appellant had had time to secure independent advice on the transaction, that he was familiar with his legal rights, that no material facts were withheld from him, that no improper means were used to induce the sale, that Mrs. McCown was an independent agent, that the appellant had not explained his delay in bringing this suit, that parties and witnesses were now unavailable and their estates had been administered and that the appellant had consented to the transaction. We quote from the report of the Master, as follows:

"With regard to the conveyance to Mrs. McCown of the right to the beneficial interest in the land: The consideration of Four Thousand Five Hundred ($4,500.00) Dollars for the full beneficial interest in the eight hundred eight-nine (889) acre tract was undoubtedly a fair consideration. The overwhelming and almost uncontested proof establishes this, and also establishes the fact that there was no market for

the sale of such an interest. R. P. Byrd, Jr., was under no incapacity before, after or on May 30, 1950. He had endeavored to farm the land; he was generally familiar with the allotment systems so vital to the value of farm lands; he had worked in the courthouse in the Master in Equity's office and was familiar with the probate rolls in the estate; he was familiar with his legal rights in the premises.

"The evidence discloses no material facts in connection with the land which were withheld from R. P. Byrd, Jr. The testimony establishes that it would have been impossible in 1950 to anticipate the decrease in tobacco allotments and the increase in demand for tobacco lands as a result of increase in tobacco prices. R. P. Byrd, Jr., visited in Florence and went over the land and the tenants were available for discussion at any time.

"No undue influence or improper means were used to induce the sale. The records of the accounts as well as the testimony show that during the period from 1940 to 1950, R. P. Byrd, Jr., was endeavoring to get funds from his trustees. It is clear that he sought out Mrs. McCown in order to sell his interest. The record shows that R. P. Byrd, Jr., dealt directly with Mrs. McCown and that the deed was sent to him in Florida for execution at a later time so that he had ample time to think about the matter and get independent advice if he so desired. So far as Mrs. McCown's being an independent agent I find that she dealt directly with R. P. Byrd, Jr., that she bought the interest in her own name, and that it passed through her estate as her property; and that she had property and used her own money to make the purchase."

The appellant relies upon the case of *Scottish-American Mtg. Co. v. Clowney*, 70 S. C. 229, 49 S. E. 569, where it was held that a sale by husband, trustee, to wife of trust property, is voidable at the option of *cestui que trust*. Such case is not here controlling. The beneficiaries of the trust in that case did not know of or consent to the transaction. The wife of the trustee, who was the grantee in said deed, testified

"that she had no knowledge of any deed to her of the premises; did not know that there was such a deed; that no money passed to her from Mr. Clowney, nor from the mortgage company to her. She did not know that she was the owner of the land; never claimed the land or exercised any acts of ownership over it; never had anything to do with getting money from the plaintiff." Here, however, the beneficiary fully consented to the transfer of his interest in the premises to Mrs. McCown, as is evidenced by his making a deed to her. He dealt directly with Mrs. McCown, who had her own money and property and bought his beneficial interest in her own name and paid a fair price therefor. Her husband, George M. McCown, did not make a sale, as trustee, to his wife of the trust property.

The factors which bear upon the validity of the consent of. a beneficiary to a sale of his interest in trust property is found in the Restatement of the Law of Trusts, Vol. I, and is as follows:

"Sec. 216—Consent of Beneficiary

"(1) Except as stated in Subsection (2) and as limited by Secs. 255 and 342(2), a beneficiary cannot hold the trustee liable for an act or omission of the trustee as a breach of trust if the beneficiary prior to or at the time of the act or omission consented to it.

"(2) The consent of the beneficiary does not preclude him from holding the trustee liable for breach of trust, if

"(a) the benficiary was under an incapacity at the time of such consent, or of such act or omission, or

"(b) the beneficiary, when he gave his consent, did not know of his rights and of the material facts which the trustee knew or should have known and which the trustee did not reasonably believe that the beneficiary knew; or

"(c) the consent of the beneficiary was induced by improper conduct of the trustee; or

"(d) the beneficiary was not of competent age and understanding; or

"(e) the trustee had an adverse interest in the transaction and the transaction to which the beneficiary consented involved a bargain which was not fair and reasonable."

The Master, in the application of the foregoing cited rule, having previously found the facts as are hereinabove quoted, held as a matter of law, that the appellant gave his consent by executing a deed of his interest in the trust property to Mrs. McCown, and such was not induced by any improper conduct on the part of the trustee of the trust estate.

The Master found that the appellant had delayed more than ten years in bringing his action to set aside the deed made by him to Mrs. Mamie McCown. He found that such a delay is not explained in the testimony of the appellant and that the three principal persons who took part in the conveyance made in 1950 are not available as witnesses; Mr. and Mrs. McCown being dead and the attorney who handled the transaction being unable to testify because of total incapacity and disability. The Master also found that more than $4,400.00 had been paid in taxes and lost as interest by Mrs. Mamie McCown because of the aforesaid conveyance, none of which is recoverable. The Master concluded that both laches and the statute of limitations bar the appellant from setting aside the conveyance by him to Mrs. Mamie McCown. He further held that the appellant, by reason of his acquiescence in the transaction between himself and Mrs. McCown for a period in excess of ten years, during which he had the full benefit of the purchase price paid for his interest, is barred from now asserting his claim. In *Bagwell v. Hinton,* 205 S. C. 377, 32 S. E. (2d) 147, we said:

"For the defendants to show that the plaintiff has been guilty of *laches,* the defendant must show: First, a delay of an unreasonable length of time by the plaintiff in instituting the action; and, second, that such delay is unexplainable and negligent in failing to do what in law should have been done. While the statute of limitations is not applicable in an action between a *cestui que trust* and a fiduciary, so long

as that relationship exists, a claim may be barred by *laches,* but the application of the principle of *laches* must be determined by the facts in each individual case." *Bell v. Mackey,* 191 S. C. 105, 3 S. E. (2d) 816; *Lazenby v. Mackey,* 196 S. C. 507, 14 S. E. (2d) 12; *Lyerly v. Yeadon,* 199 S. C. 363, 19 S. E. (2d) 648.

The Master cites the case of *Hamer v. David,* 138 S. C. 491, 136 S. E. 744, where the Court held that a beneficiary of a trust, after assigning his interest therein, subsequently ratifying it by receiving yearly benefits thereunder, and delaying bringing any action thereon for more than five years, is barred from asserting claim that assignment was fraudulently procured.

The Master found that the appellant proved no facts which constitute fraud in connection with the making by him of his deed to Mrs. Mamie McCown on May 30, 1950. He held, therefore, that the statute of limitations began to run on May 30, 1950, and since the plaintiff did not bring his action within six years, the statute barred him from relief. It is provided in Section 10-143(7) of the Code that an action for relief on the ground of fraud is not deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud.

We have carefully studied the record in this case and find that the facts amply support the conclusions reached thereon by the Master and since such findings of fact have been affirmed and concurred in by the Circuit Judge, we are bound by such findings. Likewise, the Master has properly applied the applicable law to the facts as he found them to be.

The only other question for determination is whether the appellant was entitled to an accounting by the surviving trustee, J. W. Parker, Sr., and the heirs of the deceased trustee, George M. McCown, Sr., of all their actions and of all the amounts due from the rents and profits since 1940, when the trustees were appointed as such.

It appears from the record that when J. W. Parker, Sr., and George M. McCown were appointed trustees of the R. P. Byrd Estate on March 1, 1940, that the taxes on the farm lands were in arrears and the tenants on the farm were in need of advancements. On April 13, 1940, the appellant acknowledged, in writing, that he was not in financial position to pay the taxes or to make the necessary advances for agricultural purposes, and that J. W. Parker and George McCown agreed and consented to secure and advance the necessary funds for the purpose of paying a portion of these taxes and for agricultural advances. The appellant waived his right to any rents from the said farm until the advancements so made had been repaid.

It further appears that on October 27, 1945, that the appellant addressed a letter to the aforesaid trustees, wherein he stated the following:

"I have averaged getting from the rent of the home place for the past number of year approximately $300.00 net to me a year. I understand that you gentlemen are having difficulty renting the land for the year 1946. I have agreed with you gentlemen for you to rent the place personally and individually for the next ten years, commencing January 1, 1946, and ending December 1, 1955, with the understanding that you will pay me as an annual rent the sum of $400.00, payable on November 1st of each year; and that you will pay the taxes on the land each year, and will make any and all improvements that you might deem advisable. I will not be called upon to make any improvements on the buildings or to the land during that period of time, and you will not be permitted to use any part of the $400.00 for such purposes."

In the aforesaid letter, the appellant stated "that it is to my advantage for the place to be rented by you gentlemen individually and upon the above terms and conditions."

The record also shows that on July 18, 1946, that the appellant executed the folowing receipt:

"Received of Geo. M. McCown and J. W. Parker, Trustees for the Estate of R. P. Byrd, seven hundred and fifty six and 72 dollars in full settlement for money due me for the years 1940, 1941, 1942, 1943, 1944, 1945 and 1946."

The complaint of the appellant, in paragraph 13 thereof, alleges:

"That on or about 1946, there was paid to plaintiff the sum of Four Hundred ($400.00) Dollars annually by George McCown, Sr., under the terms of a ten year rental agreement between plaintiff, beneficiary, and the trustee of plaintiff's lands, George McCown, Sr., the land or acreage consisting of approximately nine hundred (900) acres of land, buildings, tobacco allotment, as well as cotton allotment. Upon information and belief, the tobacco allotment was in excess of twenty (20) acres. That said rental payments were made through the year 1949."

The Master, in his report, made the following findings:

"I find that a sufficient accounting is shown in the records introduced in evidence. Statement of the years 1940 through 1943 showing the status of the accounts was introduced into evidence at the hearing in the previous case, and ledger sheets in Mr. McCown's handwriting for the years 1944, 1945, 1947, 1948 and 1949 were introduced into evidence here. No question of the status of the accounts has been raised. The cancelled checks of Mr. McCown were destroyed in December, 1959. I find that prior to May 30, 1950, R. P. Byrd, Jr., had received from the trustees at least Four Thousand Seventeen and 28/100 ($4,017.28) Dollars. At several places in the earlier accountings it appears that the interest was being paid on loans made by Mr. McCown to R. P. Byrd, Jr. There is no showing where or when final payment of these loans was made; I find that the evidence indicates that they were settled at the time the receipt was given on July 18, 1946.

"Of the sum of Four Thousand Seventeen and 28/100 ($4,017.28) Dollars, I find that Sixteen Hundred ($1,600-

.00) Dollars was paid under the terms of the agreement of October 27, 1945; that One Hundred Seventeen and 76/100 ($117.76) Dollars represented payment on September 2, 1947, to R. P. Byrd, Jr., by the Clerk of Court for his part of the Four Hundred Fifty ($450.00) Dollars condemnation verdict; and that Seven Hundred Fifty-six and 72/100 ($756.72) Dollars was paid at the time of the signing of the receipt on July 18, 1946. There is no doubt that in accordance with the wording of the receipt, 'Received * * * in full payment * * *,' that this amount was paid to R. P. Byrd, Jr., on that date. That leaves a balance of One Thousand Five Hundred Forty-two and 80/100 ($1,542.80) Dollars which was paid to R. P. Byrd, Jr., prior to July 18, 1946, representing payments made over a six (6) year period. This would give an average payment of Two Hundred Fifty-two and 13/100 ($252.13) Dollars a year, which figure fairly well agrees with the statement in the letter of October 27, 1945, to the effect that R. P. Byrd, Jr., had been getting approximately Three Hundred ($300.00) Dollars a year, especially since the records do not show repayment by R. P. Byrd, Jr., of loans made to him by Mr. McCown.

"The trustee had fully accounted to R. P. Byrd, Jr., at the time of the signing of the receipt on July 18, 1946, at which time the lease or assignment of the beneficial interest was in effect, and all payments due under the agreement were made to R. P. Byrd, Jr., prior to May 30, 1950, when the conveyance was made to Mrs. McCown. The payment of Four Hundred ($400.00) Dollars each year under the agreement was the only accounting to which R. P. Byrd, Jr., was entitled, and the fairness or validity of that agreement is not challenged.'

The Master concluded that the appellant was not entitled to any further accounting from the trustees. He found that the accounting filed in a former proceeding; the accounts in George McCown's handwriting introduced in evidence in this case; the receipt dated July 18, 1946; the acknowledgement of the payment of the money

under the agreement dated October 27, 1945; and the payment of the consideration of $4,500.00 by Mrs. Mamie McCown on May 30, 1950, when the deed was executed by the appellant to her, constitute all the accountings to which he was entitled. He further concluded, as a matter of fact and law, that a delay of more than ten years by the appellant in demanding an accounting was unreasonable and he was barred by *laches*. A careful review of the entire record in connection with the accounting phase of this case shows that there is competent and substantial evidence to support the findings and conclusions of the Master, which were concurred in by the Circuit Judge. We are bound by such findings of fact.

Since we have concluded that the conveyance by the appellant to Mrs. Mamie McCown of his beneficial interest in the "Home Place", on May 30, 1950, was a valid one and that such conveyance should not be set aside, the appellant was not entitled to any accounting after the date of said conveyance.

In view of the conclusion heretofore reached, we find it unnecessary to discuss other issues contained in the record in this case. We conclude that there was ample evidence to support the factual conclusions reached by the Master.

The exceptions of the appellant are overruled and the judgment of the lower Court is affirmed.

Affirmed.

TAYLOR, C. J., and LEWIS and BUSSEY, JJ., concur

BRAILSFORD, J., concurs in result.