## 19115

Ex parte GUARANTY BANK & TRUST COMPANY, Respondent. In re Joanne Byrd MATHERS, Reddin Byrd, and Thomas Edward Byrd, v. R. P. BYRD, Jr., Mrs. R. P. Byrd, Claude V. Brown, Trustee of the George S. Byrd Lands, Epworth Orphanage, John E. Lunn, Edward L. Young, Guaranty Bank & Trust Company, Trustee, Dusenbury, Dusenbury & McKenzie Legal Enterprises, Inc., George S. Byrd, Mrs. George S. Byrd, Florence County Industrial Loan & Development Commission, John Doe and Mary Roe as Unknown, Unborn and Incompetent Contingent Unknown Remaindermen, of Whom John Doe and Mary Roe as Unknown, Unborn and Incompetent Contingent Remaindermen are, Appellants.

(177 S. E. (2d) 358)

*John L. McGowan, Esq.,* of Florence, *for Appellants,*

*E. N. Zeigler, Esq.,* of Florence, *for Respondent,*

October 29, 1970.

LITTLEJOHN, Justice:

The Honorable G. Badger Baker, as Judge of the Court of Common Pleas, issued his order authorizing Guaranty Bank & Trust Company, as substitute trustee of the Estate of R. P. Byrd, Sr., to deviate from the terms of the trust established by his will in 1928, and to sell by fee simple deed 124.485 acres of land to the Florence County Industrial Loan & Development Commission as agent for an undisclosed principal. The unborn contingent remaindermen, by their Guardian *ad Litem,* appeal.

R. P. Byrd, Sr. executed his will in 1928 and died within the year owning several hundred acres of farm land in Florence County. By the terms of his will he created a trust estate. The relevant terms of the trust and duties of the trustee were as follows:

"Item 3: I hereby direct the said trustees to hold the said estate hereinabove stipulated for the sole benefit of the beneficiaries to lease or rent the arable lands contained in the said premises and after the payment of the usual taxes the pro-

ceeds derived therefrom be paid annually to the said beneficiaries; provided, however, that should the said beneficiaries or either of them, desire to use and occupy the premises, so provided for them, individually, they shall have the right to cultivate the whole or any part of the same at their option, and to use the proceeds derived therefrom for their individual uses; in the meantime, I request the said trustees to keep an eye to the interest of the said beneficiaries and to advise and admonish them in such way as would be for their individual benefit and benefit of the said premises, which I urge shall be kept in a good state of cultivation. It is distinctly understood, that the trust herein provided shall be a permanent one, that is to say: to hold under said trust the said premises for and during the term of the natural life of the said beneficiaries, George S. Byrd and R. P. Byrd, Jr., and should either of my sons predecease the other, then, and in such event, the title to the property provided for my said son, George S. Byrd, under the trust (should he without wife or issue, predecease my son, R. P. Byrd, Jr.) shall vest in my said son, R. P. Byrd, Jr., and should my said son R. P. Byrd, Jr., without wife or issue predecease my son, George S. Byrd, then the provision of the trust provided for R. P. Byrd, Jr., shall vest in the said George S. Byrd."

"Should the said beneficiaries of either of them die leaving a wife and a child or children then the title to the property hereinabove provided for them shall vest in fee simple in his or their heirs, provided, however, that should the wife of either, or both of said beneficiaries die leaving no issue, child or children on my said son or sons, then the wife or wives of either of the said beneficiaries to be vested with only a life estate in the property hereinabove provided for my said sons, respectively, with remainder over, after their death to the Official Board of Epworth Orphanage, an institution of the Methodist Church, located at Columbia, S. C., to have and to hold the same in fee simple for the benefit of the said institution."

Facts of interest, but not necessary to a determination of the issues before us, are recited in the opinion of this court in *Byrd v. King,* 245 S. C. 247, 140 S. E. (2d) 158 (1965). From a reading of this case it would appear obvious that the property involved in this action has not been very productive.

The land now becomes highly desirable and valuable as commercial and industrial property because newly-constructed interstate highways I-20 and I-95 intersect on the premises. As a result the trustee secured permission of the court on April 30, 1970 to employ an expert to prepare an overall land use development plan. Interested parties participated in that proceeding and there was no appeal from the judge's order directing the study. The experts employed (Lyles, Bisset, Carlisle and Wolff) recommended use of the land for industrial purposes because of the dramatic change in potential use since 1928 when the trust was created.

On August 17, 1970 the Florence County Industrial Loan & Development Commission offered to enter into an option to purchase 124.485 acres for the sum of $473,960. Thereafter, the trustees instituted this action to ask the approval of the court to deviate from the terms of the trust, alleging the existence of a reasonable necessity as a matter of fact for authorizing the sale, and alleging that the beneficiaries of the trust and the trust itself would suffer unless the sale is authorized.

The case was referred to the Master in Equity for Florence County, who recommended that the trustee be directed by the court to sign the option agreement and upon compliance, execute a fee simple deed to the purchaser.

Exceptions were taken to the master's report and the circuit judge dismissed the exceptions and ordered the relief recommended by the master. We therefore have in an equity case findings of fact by the master, concurred in by the circuit judge, and such will not be disturbed by this court unless found to be without evidentiary support

or against the clear preponderance of the evidence. *Todd v. Todd,* 242 S. C. 263, 130 S. E. (2d) 552.

The Guardian *ad Litem* in this appeal presents two questions for the determination of this court:

1. Did the Court err and abuse its discretion in finding as a matter of fact that there exists a reasonable necessity for the sale of a portion of the Byrd Trust Land?

2. Did the Court err in finding as a matter of law that it has the power to authorize the Trustee to deviate from the terms of the testamentary trust set forth in the Will of R. P. Byrd, Sr. dated January 13, 1928?

It is the contention of the appellants that the facts present merely an attractive business offer, and no showing is made warranting a deviation from the terms of the trust. A review of the facts, abundantly established by the evidence, will reveal that this property as farm land has had, in recent years, a very low monetary yield. See *Byrd v. King, supra.* The master found "* * * the agricultural use of the land held by the trustee brings in annually a net income of about Three Thousand ($3,000.00) Dollars." As pointed out by the master, interest at 6% on the proceeds of the sale after payment of capital gain tax should be in the neighborhood of $20,000 per year. The fact that this property can now be sold for commercial purposes and used for industrial development brings about somewhat of a bonanza or a windfall. No landowner with complete control of this property, and in his right mind, would continue to use this land for agricultural purposes.

It should be noted that the will of R. P. Byrd, Sr. did not authorize the trustee to convey his real estate.

At the same time sale was not specifically prohibited. Under such facts a sale will not be authorized merely because it would benefit the trust. The court will approve a power of sale only where the circumstances are such that the real purposes of the trust would be defeated or seriously impaired

unless the trustee be permitted to sell the property and convert the same to cash.

In *Wingard v. Hennessee*, 206 S. C. 159, 33 S. E. (2d) 390 (1942) this court held that a court of equity could provide for sale of land "in the case of reasonable necessity." An absolute necessity need not be shown. It is sufficient that a reasonable necessity be proven, such to be determined from the whole of the evidence. The consent of the adult interested parties to this action has been given; such is not controlling but has weight and persuasive value.

■ The real intent of the settlor of the trust was to provide for the beneficiaries. This is emphasized when he said, "I request the said trustee to keep an eye to the interest of the said beneficiaries, * * *." In 1928 it was his conviction that this could be best accomplished by the cultivation of farm land. At that time farming was a profitable business. He therefore placed the farm land in trust in an effort to accomplish his overall ambition to provide for the beneficiaries. At that time the testator could not have conceivably foreseen the industrialization which has come to the southland since World War II. Even the wisest of men could not have foreseen the construction of interstate highways nor have anticipated that two such roads would cross on the Byrd property. Failure to grant the relief sought in this action would defeat the overall purpose of the trust to provide for the beneficiaries and would be to their detriment.

We think that a reasonable necessity as contemplated by the law has been shown. Sale of the property merely changes the form of the body of the trust. The beneficiaries will enjoy the income from the money and the ultimate distribution instead of enjoying the income from the land and its ultimate distribution.

■ The contention of the appellants that the court does not have the power to authorize the trustee to deviate from the terms of the trust cannot be sustained. In so holding we are not unaware that normally a testator may do

as he pleases with his property, and normally it would be a usurpation of power to modify the testator's plan. The fact that beneficiaries might suffer economic loss if a sale is not effected is not always sufficient to warrant a deviation from the terms of the trust, but we do not hesitate to hold that the overwhelming showing made in this case demands that relief be granted.

In addition to the advantageous price offered for the 124.-485 acres of land the trust, and in turn the beneficiaries according to all the evidence, will be additionally enriched by the fact that the remaining several hundred acres of land will become more valuable. This will be brought about because of the proximity to an industrial development and because the area will be supplied with natural gas, water, and railroad facilities.

The leading South Carolina case on the power of a court to order sale of trust property in the absence of specific authority in the trust instrument is *Wingard v. Hennessee, supra*. In that case the testator left property in trust to his son for the support and maintenance of his incompetent daughter and his son, and upon the death of the daughter, in fee simple to the son. The son was not given power to sell the land but was given authority to sell timber and pulpwood if necessary. The court allowed sale of the land even though the specific instruction of the testator was contrary.

This court reasoned:

"The action as consummated was one for the change of investment of the *trust res*. The power and duty of a Court of equity to provide by sale for such in case of reasonable necessity, here found by the lower Court and now affirmed because it is amply supported by the evidence, are too well established to require the citation of authority."

Convincing text authority exists for the proposition urged by the trustee.

The Restatement of Trusts (2nd), Vol. I, paragraph 167 reads:

"(1) The court will direct or permit the trustee to deviate from a term of the trust if, owing to circumstances not known to the settlor and not anticipated by him, compliance would defeat or substantially impair the accomplishment of the purposes of the trust; and in such case, if necessary to carry out the purposes of the trust, the court may direct or permit the trustee to do acts which are not authorized or are forbidden by the terms of the trust."

In 54 Am. Jur., Trusts, § 449 (1945), the rule is stated that:

"* * * Power to authorize a sale, regardless of the terms of the trust, may, however, exist when necessary to carry out an ultimate purpose of the trust in the light of a change in conditions and circumstances not contemplated by the creator of the trust."

"* * * Such authorization is proper where the sale is desirable for the preservation or salvage of the trust estate or the protection of the interests of beneficiaries * * * in other words, whether the sale is manifestly in the interest of the trust estate."

These authorities were cited with approval in the *Hennessee* case.

By statute in South Carolina a court is authorized to allow deviation from the terms of a trust instrument. Code of Laws of South Carolina, 1962:

"§ 67-60. *Power of court not restricted by §§ 67-58, 67-59 and 67-61.*—The provisions of §§ 67-58, 67-59 and 67-61 shall not be construed as restricting the power of a court of proper jurisdiction to permit a fiduciary to deviate from the terms of any will, agreement, or other instrument relating to the acquisition, investment, reinvestment, exchange, retention, sale or management of fiduciary property."

In authorizing the sale of the land we are aware, as held in the case of *Fairey v. Strange,* 115 S. C. 10, 104 S. E. 325 (1920), "Land is the safest investment known to the law,

and mere money the most unsafe and easiest to lose." Occasionally, however, conversion of land to money is warranted by direction of the court. The court of common pleas had the power, and the duty under the facts of this case, to bring about such a conversion. The administration of a trust estate is always subject to the scrutiny of the court and to the observation of all interested parties; the trustee will have a continuing duty to protect the money as well as the remaining land.

The lower court properly determined the issues, and the decree of Judge Baker is,

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.